UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-461-KDB
(3:02-cr-215-KDB-1)

| | |
|---|---|
| **DWAYNE EDDIE MUNGO,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), in which he raises a claim pursuant to Rehaif v. United States, 139 S. Ct. 2191 (2019).

**I.    BACKGROUND**

Petitioner was charged in the underlying criminal case with: Count (1), possession of a firearm by a felon (18 U.S.C. §§ 922(g)(1), 924(e)); and Count (2), possession with intent to distribute five grams or more of a mixture and substance containing cocaine base. (3:02-cr-215 ("CR") Doc. No. 5 at 1). Count (1) alleges as follows:

> [H]aving been previously convicted in the General Court of Justice, Superior Court Division of Mecklenburg County, North Carolina of a crime punishable by imprisonment for a term exceeding one year, that is: on or about May 5, 1989, Breaking and Entering; on or about December 18, 1989, Common Law Robbery; on or about August 16, 1991, Possession of Cocaine; on or about June 12, 1993, Sale and Delivery of Cocaine; on or about October 18, 2000, Delivery of Cocaine and Possession With Intent to Sell and Deliver Cocaine, and in the United States District Court for the Western District of North Carolina, on or about May 5, 1993, Use of Firearm During Trafficking, did knowingly and unlawfully possess[ing] a firearm, in and affecting interstate commerce, to wit: a Ruger semiautomatic pistol, in violation of Title 18, United States Code, Section 922(g)(1) and 924(e).

(CR Doc. No. 5 at 1).

1

The parties entered into a written Plea Agreement in which Petitioner "agree[d] to enter a voluntary plea of guilty to Count One as set forth in the Bill of Indictment, and admit[ted] to being in fact guilty as charged in that Count." (CR Doc. No. 38 at 1). The Plea Agreement set forth Petitioner's sentencing exposure and provides that Petitioner was aware he would be sentenced after the Court determined his Sentencing Guidelines. (CR Doc. No. 38 at 1-2). The parties agreed to make the following non-binding recommendations: that a sentence of not less than 15 years to life imprisonment was required by 18 U.S.C. § 924(e) and U.S. Sentencing Guidelines § 4B1.4; no other Chapter 2 or 3 enhancement or reductions applied; and the United States would recommend up to a three-level reduction in offense level pursuant to §§ 3E1.1 and 3E1.1(b)(2). (CR Doc. No. 38 at 2-3). The parties agreed that, notwithstanding any recommendations in the Plea Agreement regarding offense level, a career offender or armed career criminal enhancement would apply if applicable, and that the Court would use a different offense level if the Court determines that such was correct. Petitioner stipulated that there was a factual basis for the plea "and relieve[d] the United States of any further obligation to present evidence." (CR Doc. No. 38 at 5). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty and Petitioner specifically agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct (CR Doc. No. 38 at 6). The Plea Agreement further provides that there were no agreements, representations, or understandings between the parties except those set forth in the Plea Agreement, and none would be entered into unless executed in writing and signed by all the parties. (CR Doc. No. 38 at 10). The Plea Agreement was signed by the prosecutor, defense counsel, and Petitioner. (CR Doc. No. 38 at 11).

A Rule 11 hearing came before Magistrate Judge Carl Horn, III on May 13, 2003. See (CR Doc. No. 41). Petitioner stated under oath that he understood the charges against him including his

sentencing exposure and how the U.S. Sentencing Guidelines might apply to his case, that the sentencing range would not be determined until after the Presentence Report was prepared, and that he may receive a sentence higher or lower than the guidelines. (CR Doc. No. 41 at 2). Petitioner stated that he understood the rights he was waiving by pleading guilty including the rights to plead not guilty, have a speedy trial, summon witnesses on his behalf, confront the witnesses against him, be represented by a lawyer, be presumed innocent, and require the Government to prove his guilt beyond a reasonable doubt. (CR Doc. No. 41 at 2-3). Petitioner specifically acknowledged the waiver of his appellate and post-conviction rights. (CR Doc. No. 41 at 3). Petitioner admitted his guilt of the count to which he was pleading guilty. (CR Doc. No. 41 at 3). Petitioner stated he understood the terms of the Plea Agreement and agreed to those terms including the waiver of his appeal rights, and that he had signed the Plea Agreement. (CR Doc. No. 41 at 3). Petitioner denied that anyone threatened, intimidated, or forced him to enter the Plea Agreement or made any promises of leniency other than the terms of the Plea Agreement. (CR Doc. No. 41 at 3). Petitioner stated that he had enough time to discuss any possible defenses to the charges with counsel and was satisfied with counsel's services. (CR Doc. No. 38 at 4). Counsel confirmed that he reviewed each of the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood those terms. (CR Doc. No. 38 at 4). Judge Horn found that the plea was knowing and voluntary and that Petitioner understood the charges, potential penalties, and consequences of his plea. (CR Doc. No. 38 at 4).

The Presentence Investigation Report ("PSR") calculated the base offense level as 24 because the offense is a violation of § 922(g). (CR Doc. No. 68 at ¶ 14). However, Petitioner qualified as an armed career criminal pursuant to U.S. Sentencing Guidelines § 4B1.4 with an offense level of 33 based on his past convictions for: robbery with a dangerous weapon

3

(89CRS44239, 89CRS47581); sale and delivery of cocaine (92CRS86425); possession with intent to sell or deliver cocaine (92CRS86426); and use and carrying a firearm during and in relation to a drug trafficking crime (3:93CR26-01-MU). (CR Doc. No. 68 at ¶ 20). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 30. (CR Doc. No. 68 at ¶¶ 21-22).

The PSR's Criminal History Section included the following prior convictions: on December 18, 1989, Petitioner was sentenced to 5 years' imprisonment, concurrent, for two counts of robbery with a dangerous weapon (89CRS44239, 47581); on July 12, 1993, he was sentenced to five years' imprisonment for sale or delivery of cocaine and possession with intent to sell or deliver cocaine (92CRS86425, 86426, consolidated), for which he was discharged on July 20, 1993; on May 5, 1993 he was sentenced to 60 months' imprisonment for use and carrying of a firearm during and in relation to a drug trafficking crime and aiding and abetting (3:93CR26-01-MU); and on October 18, 2000, he was sentenced to 15 to 18 months' imprisonment for delivery of cocaine (99CRS25610) from which he was discharged from prison on June 29, 2001. (CR Doc. No. 68 at ¶¶ 27, 31, 32, 35). This resulted in 15 criminal history points and two more points were added because the instant offense was committed less than two years following Petitioner's release from custody in case number 99CRS25610. (CR Doc. No. 68 at ¶¶ 37-38). Further, Petitioner qualified as an armed career criminal and therefore his criminal history category was VI. (CR Doc. No. 68 at ¶ 39).

The guidelines imprisonment range for an offense level of 30 and a criminal history category of VI was 168 to 210 months' imprisonment, however, the statutory minimum sentence was 180 months' imprisonment, so the applicable guidelines range was 180 to 210 months' imprisonment. (CR Doc. No. 68 at ¶¶ 69-70).

4

In a Judgment entered on December 3, 2004, Petitioner was adjudicated guilty of Count (1) and sentenced to 180 months' imprisonment followed by three years of supervised release. (CR Doc. No. 48).

Counsel filed a memorandum brief on direct appeal pursuant to Anders v. California, 386 U.S. 738 (1967), stating there were no meritorious grounds for appeal but addressing whether Petitioner was properly found to be an armed career criminal. Petitioner was informed of his right to file a *pro se* supplemental brief but did not do so. The Fourth Circuit affirmed on March 15, 2006, finding that there was no error in classifying Petitioner as an armed career criminal and increasing his statutory minimum sentence to 15 years' imprisonment and, because he was sentenced to the minimum statutory term, there was no error with the application of the sentencing guidelines. United States v. Mungo, 174 F. App'x 734 (4th Cir. 2006).

Petitioner served his sentence of imprisonment and began serving supervised release on October 9, 2015, but Petitioner pleaded guilty to committing a new law violation, supervised release was revoked, and Petitioner was sentenced to 51 months' imprisonment on December 8, 2016. See (CR Doc. No. 58 at 1; CR Doc. No. 66).

Petitioner filed the instant § 2255 Motion to Vacate on September 19, 2019.[1] (Doc. No. 1). He argues that the Government failed to prove that he knowingly possessed a firearm while he was within the relevant status of a prohibited person as required by Rehaif. He claims that he never knowingly possessed a firearm and was never aware that he fell within the relevant status of a prohibited person, which violated his right to due process. Petitioner asserts that his Motion to

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

Vacate is timely filed under 28 U.S.C. § 2255(f)(3). He seeks dismissal of the Indictment or dismissal of the § 922(g) count.

The Government has filed a Motion to Dismiss the § 2255 Motion to Vacate arguing that Petitioner waived his right to collaterally attack his conviction, that his Rehaif claim is procedurally defaulted from § 2255 review, and that his claim fails on the merits.[2]

On June 19, 2020, the Court issued an Order informing Petitioner of his right to respond to the Government's Motion to Dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 5). The Order cautioned Petitioner that his failure to file a persuasive response within 30 days would likely result in dismissal of this action. (Id.). The Roseboro Order was returned as undeliverable on July 1, 2020. (Doc. No. 6). The Federal Bureau of Prisons' website indicates that Petitioner was released on June 3, 2020. See https://www.bop.gov/inmateloc/ (accessed August 11, 2020); Fed. R. Ev. 201 (addressing judicial notice). Petitioner has not updated the Court with his new address.

**II.    SECTION 2255 STANDARD OF REVIEW**

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[2] The Government has not raised statute of limitations as a defense and the Court declines to address the issue *sua sponte*. See generally Day v. McDonough, 547 U.S. 198, 205, 209, 211 n.11 (2006) (in the state habeas context, "[a] statute of limitations defense … is not jurisdictional, hence courts are under no obligation to raise the time bar *sua sponte*.") (quotation omitted); see also Howie v. United States, 2012 WL 6194406 (W.D.N.C. Dec. 12, 2012) (recognizing that § 2255's statute of limitations is not jurisdictional and that courts *may* consider it *sua sponte*).

6

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.   DISCUSSION

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims" such as a sentence imposed in excess of the statutory maximum or a challenge to the validity of a guilty plea. United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005).

The Court complied with Rule 11 by asking Petitioner whether he understood the nature of the charges, his sentencing exposure, the rights he was waiving by pleading guilty, and the consequences of pleading guilty including the waiver of his appellate and post-conviction rights. Petitioner confirmed that he understood the foregoing. Petitioner admitted his guilt and entered his plea without threats, coercion, or promises other than those contained in the Plea Agreement. Petitioner's guilty plea was thus freely and voluntarily entered. See generally Lemaster, 403 F.3d at 221–22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). This knowing and voluntary guilty plea, including the waiver of post-conviction rights, waived Petitioner's present Rehaif claim. See United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (a waiver remains valid even in light of a subsequent change in the law).

This claim is also procedurally defaulted from § 2255 review. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Cause for procedural default may exist, for instance, where Petitioner raises a meritorious claim of ineffective assistance of counsel or "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984). Actual prejudice

is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

Petitioner failed to respond to the Government's Motion to Dismiss and, therefore, he has not demonstrated cause and prejudice or actual innocence, and no exception to the procedural default rule is evident in the record. Petitioner's Rehaif claim is thus procedurally defaulted from collateral review and is subject to dismissal on that basis as well.[3]

### IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss will be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Respondent's Motion to Dismiss, (Doc. No. 4), is **GRANTED**.

2. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

---

[3] The Court finds it unnecessary to address the merit of Petitioner's claim and declines to do so in the interest of judicial economy.

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

4. The Clerk is instructed to close this case.

Signed: August 11, 2020

Kenneth D. Bell
United States District Judge